No. 25,373.

NEANDER C. EWING, for Himself and as Administrator of the Estate
of HATTIE E. EWING, Deceased, *Appellants,* v. THE UNION
PACIFIC RAILROAD COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Collision—Auto and Railroad Train—Evidence—Instructions
of Trial Court.* Instructions complained of and the evidence on which they
were based examined, and it is held that there was evidence sufficient to
justify the court in giving the instructions.

2. SAME—*Arguments of Counsel.* Where counsel for the defendant waives oral
argument at the conclusion of the opening argument for the plaintiff, it is
not error to refuse to permit counsel for the plaintiff to make further
argument.

3. SAME—*No Improper Conduct of Jury in Reaching Verdict.* It is not im-
proper conduct on the part of a jury for all jurors to agree to a conclusion
reached by a majority of the jurors and return a verdict accordingly.

4. SAME—*Evidence of Jurors to Show Misunderstanding of Instructions not
Admissible.* Evidence of jurors will not be received to show that they mis-
understood the instructions, and that they would not have agreed to like
verdicts in two cases, arising out of the same accident and tried at the same

Ewing v. Railroad Co.

time, if they had understood that one verdict could have been rendered in one case and a contrary verdict in the other case.

5. SAME—*Answer to Special Questions Consistent with General Verdicts.* The answers to special questions submitted to the jury and the general verdicts in two cases tried at the same time have been examined, and it is held that the answers are consistent with the general verdicts.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed December 6, 1924. Affirmed.

*Fred Robertson, E. M. Boddington,* both of Kansas City, *William H. Thompson, Elbridge G. Wilson,* and *Wilbert F. Thompson,* all of Tulsa, Okla., for the appellants.

*T. M. Lillard, Bruce Hurd,* and *O. B. Eidson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: Neander C. Ewing commenced one of these actions to recover from the defendant damages sustained by him in a collision with a train while he was attempting to cross the railroad track of the defendant at a public highway. Neander C. Ewing, as administrator of the estate of Hattie E. Ewing, attempted to recover damages for her death, which occurred in the same accident. A verdict was rendered for the defendant in each case, and the plaintiff in each case appeals.

The cases were tried together in the district court, and questions submitted to the jury were answered as follows:

"1. Was the plaintiff, Neander C. Ewing, guilty of contributory negligence? A. Yes.

"2. Was the wife of plaintiff, Hattie E. Ewing, guilty of contributory negligence? A. No.

"3. Was the defendant guilty of negligence? A. Yes.

"4. Did the defendant keep and maintain the railroad crossing and south approach thereto in a reasonably safe condition for persons traveling in an automobile on the highway over said crossing? A. No.

"5. If you answer the last preceding question in the negative, did the defective condition of the railroad crossing kill the engine of plaintiff's automobile shortly before the accident in question? A. No.

"6. Would plaintiff's automobile have safely crossed over the railroad crossing if the engine had not been killed on the crossing? A. Yes.

"7. Did the train whistle at the regular whistling post for the crossing where the accident occurred? A. Yes.

"8. Did the railroad company cause boards to be placed well supported by posts or otherwise and constantly maintained with boards elevated so as to be easily seen by travelers coming from the west toward the crossing in question? A. Yes.

"9. Did the defendant railroad company allow unnecessarily high weeds and brush to grow upon its right of way west of said crossing at the time of the accident, which interfered with the view of approaching trains coming from the west? A. Yes.

"10. If you answer the last preceding question in the affirmative, did plaintiff know at the time of the accident that the weeds and brush in the right of way interfered with the view of trains coming from the west? A. No.

"11. When Mr. Ewing first discovered that he was approaching the railroad crossing, did he increase the speed of the automobile? A. Yes.

"12. What was the highest rate of speed at which the automobile traveled as it approached the railroad crossing after Mr. Ewing discovered that this crossing was ahead of him? A. Twelve miles an hour.

"13. If the automobile had approached the railroad crossing at a rate of speed not in excess of eight miles per hour, could its occupants have seen the train as it approached from the west in time to avoid the collision? A. Yes.

"14. From a point in the highway fifty feet south of the track was the view of a train approaching from the west open for a distance of eight hundred feet west of railroad crossing, under the weather conditions on the date of the accident? A. Yes.

"15. From a point in the highway fifty feet south of the track, for what distance west of the railroad crossing could a train approaching from the west have been seen under the weather conditions on the date of the accident by a person traveling in an automobile? A. Eight hundred feet.

"16. As a traveler on the highway proceeded nearer to the railroad crossing after passing a point fifty feet south of it, would the distance that a train approaching from the west could be seen steadily increase? A. Yes.

"17. From a point in the highway twenty-five feet south of the track, for what distance west of the railroad crossing could a train approaching from the west have been seen under the weather conditions on the date of the accident by a person traveling in an automobile? A. About 1,300 feet.

"18. How far west of the crossing was the locomotive engine at the time the plaintiff's automobile went upon the track? A. About 113 feet.

"19. Did the railroad engineer omit to do anything that he could have done to prevent the accident after the automobile got upon the track? A. No.

"20. If you answer the last preceding question in the affirmative, then state fully what the engineer omitted to do?

"21. State fully what, if any, negligence the defendant was guilty of? A. Failing to keep the weeds and brush cut on south side of right of way immediately west of crossing and failure to keep crossing and grade on south side of crossing in proper condition.

"22. As their automobile approached the crossing did Mr. and Mrs. Ewing have an understanding that they would both keep a lookout for approaching trains? A. Yes."

The answers to the questions submitted to the jury are fully set out in the abstract, but a transcript of only a part of the evidence has been made and only the part transcribed has been abstracted.

Ewing v. Railroad Co

1. The plaintiffs complain of instructions numbered 7, 8, 9, and 19½ given by the court, and argue that those instructions were not based on evidence. Those instructions were as follows:

"7. You are instructed, gentlemen, that where two or more parties are in pursuit of a mutual purpose and possessed of equal privileges of direction and control of a vehicle in which they are traveling in pursuit of such common object, they are in the law held as agents of each other and the negligent act of one in the furtherance of the common purpose is imputable to the other.

"8. If Mrs. Ewing by agreement or understanding with her husband undertook to keep a lookout for trains as they approached the crossing where the accident occurred, then she had the same duty to ascertain that there was no train approaching before she went upon the track as the driver of the car had; and if she failed to exercise due care in this respect and such failure contributed to cause the accident, as hereinafter explained, then your verdict must be for the defendant in the suit to recover damages for her death.

"9. If you find from the evidence in the case that the plaintiff and his wife were, at the time of the injuries complained of, in pursuit of a mutual purpose and possessed of equal privileges of direction and control of the automobile in which they were traveling in pursuit of such common object, and either did something or refrained from doing something that amounted to a want of ordinary care, which act or acts coöperated with act or acts of the defendant to produce the injuries complained of, and that such act or omission to act on the part of plaintiff or his wife was the proximate cause of the injuries complained of, then the plaintiffs were guilty of contributory negligence, and cannot recover.

"19½. The laws of this state provide that upon approaching a railroad crossing outside of any village or city a person operating an automobile shall reduce the speed of his machine to a rate not exceeding eight miles an hour, and shall not exceed such speed until entirely past such crossing. If you find from the evidence in this case that Mr. Ewing, in approaching the crossing where the accident occurred, violated this requirement of the law and that his violation of it contributed to cause the injury, then I instruct you that he cannot recover in this case for his own personal injury or for the damage done to his automobile in the collision; and if Mrs. Ewing was in joint control of said automobile, as elsewhere explained, no recovery can be had for the loss of her life."

The abstract of the plaintiffs does not purport to be an abstract of all the evidence and does not say that there was no evidence on the propositions concerning which the court instructed the jury in instructions 7, 8, and 9. The abstract does say it "is a true and correct abstract of all proceedings necessary to present the questions raised on appeal," but that it is not sufficient for this court to determine that the court erred in giving instructions where it is urged that they were erroneous because they were not based on evidence. The abstract should in some way show that there was no evidence on

which to base such instructions.  The defendant has abstracted a part of the evidence.  The abstract of the plaintiffs and the abstract of the defendant show that instructions numbered 7, 8 and 9 were based on evidence.

Instruction 19½ merely repeated what the statute declares to be the law.  Section 8-122 of the Revised Statutes in part reads:

"Upon approaching a railroad crossing or intersection of highways outside of any village or city, or turning corners, the person operating a motor vehicle shall reduce the speed of such vehicle to a rate not exceeding eight miles an hour, and shall not exceed such speed until entirely past such crossing or intersection."

No error in the instructions has been shown.

2.  Another complaint is that "plaintiffs were denied an opportunity to discuss the special questions of fact as a part of their opening argument to the jury."  The plaintiffs had more than one counsel conducting the trial.  One of them made the opening argument and closed it.  The defendant then waived argument.  The plaintiff then requested permission to argue the special questions of fact.  That permission was denied.  Of that the plaintiffs complain.

In *Railroad Co. v. Vanzego,* 71 Kan. 427, 80 Pac. 944, the syllabus reads as follows:

"Where, on the trial of a case in a district court, the arguments to the jury are limited to one hour on each side, and the attorney for the party on whom rests the burden of the issue announces that he desires to occupy only thirty minutes and requests the court to inform him when the time has expired, which the court does, and he ceases without request for further time, and thereupon the attorney for the opposing party asks that the case be submitted without further argument, it is prejudicial error to permit another attorney to address the jury in behalf of the first party."

This rule was followed in *S. K. Rly. Co. v. Michaels,* 49 Kan. 388, 30 Pac. 408, and in *Nemaha County v. Allbert,* 6 Kan. App. 165.

It was not error to refuse permission to the plaintiffs to again argue the case for the purpose of discussing the special questions of fact.

3.  It is contended that the court erred "in overruling plaintiffs' motion for new trial and to set aside the special findings, because the findings of fact were determined by only a majority vote of the jury."  On the hearing of the motion for a new trial, the plaintiffs introduced the affidavits of a number of jurors which tended to show that in the determination of the answers to the questions some were first agreed to by a majority vote.  There is nothing to show that the jury had agreed to adopt the decision of the majority,

and there is nothing to show that after the majority had agreed the others did not consent thereto.

The question presented is closely analogous to one presented on a quotient verdict, where the rule is that after a quotient has been reached by each juror marking the amount to which he is willing to agree and the different amounts are added together and the sum divided by the number of jurors and the quotient is then agreed to as the verdict, it will stand as such. (*City of Kinsley v. Morse,* 40 Kan. 588, 20 Pac. 222; *Taylor v. Abbott,* 85 Kan. 198, 115 Pac. 979; *Campbell v. Brown,* 85 Kan. 527, 534, 117 Pac. 1010; *Rambo v. Electric Co.,* 90 Kan. 390, 394, 133 Pac. 553; *Sims v. Williamsburg Tp.,* 92 Kan. 636, 642, 141 Pac. 581; *Helms v. Railroad Co.,* 96 Kan. 568, 572, 152 Pac. 632; *Orendorff v. Manufacturing Co.,* 103 Kan. 183, 184, 173 Pac. 281.)

The verdicts with the answers to the special questions were returned and read in open court and were received as the verdicts and the answers of the jury. If there had been any dissent from any juror, neither verdicts nor answers would have been received.

4. The plaintiffs urge that their motions for a new trial should have been sustained because it was shown by affidavit that some of the jurors did not understand the instructions and that they would not have agreed to the verdicts if they had understood that the verdict in one case could have been different from the verdict in the other case. These are matters that inhered in the verdicts. It has long been settled that affidavits or evidence of jurors will not be received to show any matter which essentially inheres in the verdict, as that they did not assent to the verdict, that they misunderstood the instructions or the evidence, or any other matter resting alone in the jurors' breasts. (*Perry v. Bailey,* 12 Kan. 539; *Brice-Nash v. Salt Co.,* 83 Kan. 447, 111 Pac. 462; *Ohlson v. Power Co.,* 105 Kan. 252, 182 Pac. 393; *Milling Co. v. Edwards,* 108 Kan. 616, 620, 197 Pac. 1113; *Mathews v. Langhofer,* 110 Kan. 36, 39, 202 Pac. 634.) A large number of other cases might be cited to the same effect. It is not necessary to cite any more.

The verdicts and the answers were agreed to by the jurors, and no juror can be permitted to testify concerning what controlled him in reaching his conclusion. He can testify concerning misconduct of the jury, but he cannot testify concerning the wrong exercise of his judgment nor concerning his misunderstanding of the instructions.

5. The plaintiffs contend that the court erred "in overruling plaintiffs' motion to set aside the findings of fact because they are inconsistent with one another and inconsistent with the general verdicts, and contradictory to and not supported by the evidence." When the answers to the questions are examined to ascertain what are the inconsistencies or contradictions between them or between them and the general verdicts, none is apparent except a contradiction between the answer to question No. 1 and the answer to question No. 2. In the answer to question No. 1 the jury found that Neander ·C. Ewing was guilty of contributory negligence, while in the answer to question No. 2 the jury found that Hattie E. Ewing was not guilty of contributory negligence. No other inconsistency or contradiction is apparent. Concerning the answer to question No. 2, it must be said that Hattie E. Ewing could have seen the train long enough before going upon the track to have notified her husband two or three times of the approaching danger. She either saw the train in ample time to have avoided the danger or she did not look in time. In either case she cannot recover.

In *Grisham v. Traction Co.*, 104 Kan. 712, 715, 181 Pac. 119, the following language was used:

"This court has often said that a person who is injured while attempting to cross a railroad track in front of an approaching train, which he sees, or can see if he looks, is guilty of contributory negligence, and cannot recover for that injury." (*Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Bunton v. Railway Co.*, 100 Kan. 165; 163 Pac. 801; *Williams v. Electric Railroad Co.*, 102 Kan. 268, 271, 170 Pac. 397; *Burzio v. Railway Co.*, 102 Kan. 287, 290, 171 Pac. 351; *Schaefer v. Interurban Railway Co.*, 104 Kan. 394, 179 Pac. 323; *Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744; *Knight v. Railway Co.*, 111 Kan. 308, 206 Pac. 893; *Reader v. Railway Co.*, 112 Kan. 402, 210 Pac. 1112; and *Rathbone v. Railway Co.*, 113 Kan. 257, 214 Pac. 109.)

What has been said concerning Hattie E. Ewing likewise applies to the plaintiff Neander C. Ewing. The answers to the special questions show that he did not look, or if he looked he saw, and attempted to cross the track ahead of an approaching railroad train. The answers of the jury showed that the plaintiffs cannot recover. If the verdicts and judgments had been in their favor, this court would be compelled to reverse them and render judgments in favor of the defendant.

The plaintiffs, in effect, argue that the answers to the questions which show that the defendant was guilty of negligence are inconsistent with the answer to the question which shows that Neander

C. Ewing was guilty of negligence. There is no inconsistency between these answers. Both Neander C. Ewing and the defendant could have been guilty of negligence, as likewise could have been Hattie E. Ewing. There is not such an inconsistency or contradiction between the answers to the special questions or between the answers and the general verdicts which requires this court to say that the district court committed error in refusing to set aside the findings of fact or in refusing to grant a new trial.

The sufficiency of the evidence to support the verdicts and the answers is challenged. The plaintiffs have not sufficiently abstracted the evidence to present the question raised by them. The defendant has also furnished an abstract. From both abstracts it appears that there was sufficient evidence to support the answers and verdicts so far as they are questioned by the brief of the plaintiffs.

This disposes of both cases, and it is not necessary to further consider the fifth assignment of error made by the plaintiffs, which concerns the case of the administrator of the estate of Hattie E. Ewing against the defendant.

The judgment is affirmed.