No. 21,951.

BEN ANDERSON, *Appellant*, v. DAN KIRBY, *Appellee.*

SYLLABUS BY THE COURT.

1. SALE—*Standing Corn—Fraudulent Representations—Demurrer to Evidence.* In an action to recover damages for alleged fraudulent representations as to the size of two fields of corn and the value of the standing crop thereon, where the plaintiff's evidence showed that he had been a farmer all his life and could estimate what a field of corn would make to the acre, and other facts stated in the opinion showed that he and the vendor, who was also a farmer, dealt at arm's length, a demurrer to the evidence was rightly sustained.

2. SAME—*"Quotient" Verdict—New Trial.* On other causes of action the jury returned a verdict which the court became satisfied, from affidavits of jurors, was a quotient verdict. *Held,* that the court properly set aside the verdict and granted a new trial.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 6, 1919. Affirmed.

*J. B. Wilson,* of Lawrence, for the appellant.
*C. C. Stewart,* of Lawrence, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Ben Anderson owned a farm in Douglas county which he exchanged with Dan Kirby for the latter's farm in Linn county, the exchange being made in the summer of 1916. In the fall of that year, and before there was any change in the possession of the farms, Anderson purchased from Kirby the crops on two fields of the Linn county farm, and also purchased some other personal property from him. Subsequently, he claimed that he had been defrauded by misrepresentations concerning the value of the personal property, and also that Kirby had converted some of the corn to his own use after the sale.

The petition alleged four causes of action: *first,* for damages resulting from fraud in the sale of a field of corn; *second,* for fraud in the sale of a field of kafir corn; *third,* for the wrongful taking of corn belonging to plaintiff; and, *fourth,* damages for fraud in the sale of a gray mare. On the first two causes of action the court sustained a demurrer to the evidence. On the third and fourth causes of action, the jury found in plaintiff's favor, but the court granted the defendant a new trial. Plaintiff brings the case here for review, alleging that there was error in sustaining the demurrer to the evidence, and in setting aside the verdict and granting a new trial on the other causes of action.

In the petition it was alleged that the field of corn contained only 32½ acres; that Kirby well knew this fact, but fraudulently represented to Anderson that there were 50 acres in the field, and that plaintiff relied entirely upon Kirby's representations and bought the corn, paying therefor the sum of $500. The second cause of action was based upon alleged fraudulent representations that the field of kafir corn contained 24 acres, and that the crop was reasonably worth $10 per acre, when, in fact, there were only 18½ acres in the field, and it was not worth to exceed $3 per acre.

Plaintiff's evidence showed that he had been a farmer all his life, had owned two or three farms, and had lived on other farms; he was quite familiar with fields and with their size and had raised considerable corn, but not very much kafir corn; he could state pretty closely what a field of corn would make to the acre and was "well up on the farm business." He exchanged farms with the defendant in June, 1916, and looked over the Kirby farm before he purchased, and looked at the fields in question and noticed the kind of soil; he walked over the fields and looked at them. At one place in his testimony he said, "No one told me at that time how many acres there was in the field, and I did not make any effort to find out." He also testified, "When I was looking over the farm before I purchased it, Mr. Kirby said there was fifty acres in the corn field, and said that the man who sold him the farm said there was fifty acres in it." The plaintiff was on the farm in August, and again on September 13, at the time he made the purchase of the crops. His testimony as to what occurred at that time was—

"I examined the [corn] field and the defendant did nothing to keep me from making a thorough examination of the corn or of the field. He did not do anything to prevent me from measuring the field, and said that we could measure the field, he himself suggesting it, and he told me that I could purchase . . . at 50 acres at 10 bushels, or 12½ bushels to the acre and measure the field, but not in those exact words. I did not measure the field because it was late, about three o'clock. It was my hurry that prevented me from measuring the field. I walked through practically all of the field at that time. I had every opportunity to examine the corn field that I cared for."

In regard to his subsequent measurement of the field of corn, his testimony was—

"When we measured the field we did not measure the entire field, but only from the row to row, only measured the corn and not the field. I don't know how many acres there was in the field; I only measured the part on which the corn was actually growing."

The plaintiff agreed to let Kirby know after he returned home which proposition he would accept, and afterwards wrote Kirby a letter in which he said he would take the corn at 500 bushels.

Among the cases cited to support the contention that the evidence should have gone to the jury is *Abmeyer v. Bank*, 76

Kan. 877, 92 Pac. 1109. In that case, the plaintiff, who was a tailor by occupation, and wholly inexperienced in farming, purchased a field of unhusked corn. The vendor was a farmer with knowledge and experience which enabled him to determine the quantity of corn in the field; the plaintiff, with no experience in farming, relied upon the vendor's representations and assurances that the quantity of corn standing in the field was upward of 1,300 bushels. It was held that the question of whether the representations constituted fraud should have been submitted to the jury. In the present case, the plaintiff was the owner of the fields at the time he bought the crops, and had previously seen and examined the fields. As to the field of corn, his evidence was that both he and the defendant agreed that the yield would be from 10 to 12½ bushels per acre; that defendant suggested that they measure the field, but gave him the option of doing that and estimating the crop at 12½ bushels, or of calling the field 50 acres and estimating the yield at 10 bushels to the acre. His admission that the defendant offered to sell on either of the two plans, together with his admission that he was an experienced farmer, eliminated any question of fraud in the sale of the corn. The fact that he was a farmer experienced in raising kafir corn and in estimating the size of fields, and had seen and examined the field of kafir corn at different times before he purchased the crop, left him no ground to claim that any fraud was practiced upon him in respect to the kafir corn. His own testimony shows that he and the defendant were dealing at arm's length; that each was well experienced in the subject matter of the sale; and that no fraud was committed. The trial court was right in sustaining the demurrer.

In support of the motion for a new trial, defendant produced affidavits of some of the jurors which satisfied the court that the verdict upon the other two causes of action was a quotient verdict, and the court very properly set it aside and granted a new trial. (*Johnson v. Husband,* 22 Kan. 277, 283; *Ottawa v. Gilliland,* 63 Kan. 165, 65 Pac. 252.) There is no force in the contention that the admission of the affidavits permitted jurors to impeach their verdict.

The judgment is affirmed.